IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDDIE MUNOZ,<br>　　*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 5:23-cv-00870 |
| SOUTHERN FOODSERVICE MANAGEMENT, INC., and BROOKE ARMY MEDICAL CENTER<br>　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§ | JURY DEMANDED. |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff, Eddie Munoz (hereinafter, "Mr. Munoz" or "Plaintiff"), individually, brings this action against Defendants, Southern Foodservice Management, Inc. (hereinafter, "Southern Food Management") and Brooke Army Medical Center (hereinafter "BAMC") (hereinafter, collectively, "Defendants"), and for cause of action would respectfully show the Court as follows:

### I. NATURE OF THE CLAIMS

1. This is an action brought pursuant to 42 U.S.C. § 1983 to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's protected speech.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action as this case arises under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 and damages are within the jurisdiction of this Court; damages will continue to increase as this case proceeds to trial.

3. Venue is proper in the Western District of Texas – San Antonio Division pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's Complaint occurred in this district.

## III. PARTIES

4. Plaintiff, Eddie Munoz, is a citizen of the United States and the State of Texas. Plaintiff resides in San Antonio, Bexar County, Texas.

5. Defendant Southern Foodservice Management, Inc. is a Foreign For-Profit Corporation located in 431 Office Park Drive, First Floor Birmingham, Alabama 35223. Southern Foodservice Management may be served with process by serving C T Corporation System at 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136.

6. Defendant Brooke Army Medical Center is a healthcare organization within the Department of Defense. BAMC may be served at 3551 Roger Brooke Dr. Fort Sam Houston, Texas 78234.

## IV. FACTS

7. Southern Foodservice Management is a government contractor responsible for BAMC's Dining Facility and Patient Room Service at Fort Sam Houston. Plaintiff, a U.S. Navy Veteran, began his employment, as a food service worker, with Southern Foodservice Management on June 1st, 2022.

8. On or around June 21, 2022, while Plaintiff was off work, he received a phone call from shift supervisor Camille Huber ("Ms. Huber"). Ms. Huber informed Plaintiff that a high-ranking Officer had contacted Provost Marshall's office complaining of a bumper sticker affixed to Plaintiff's personal vehicle, which was parked in the BAMC visitor and staff garage. According to Ms. Huber, her bosses instructed her to call Plaintiff and ask him to remove the sticker. Plaintiff was informed that, if he refused to remove the sticker, the Defendants would have his car towed, Plaintiff would lose his driving privileges, and would possibly be terminated. Plaintiff asked Ms. Huber to have the appropriate chain-of-command send him all information or complaints about the matter in writing.

9. The bumper sticker in question was approximately four inches by four inches and read "F[American flag graphic]K BIDEN."

10. Hatch Act regulations specifically state that an employee may place a partisan political bumper sticker on his personal vehicle and park that vehicle in a federal parking lot or garage. *See* 5 C.F.R. § 734.306, Example 7. Furthermore, according to Department of Defense Directive No. 1344.10, published February 19, 2008, members of the Armed Forces on Active Duty may "display a political bumper sticker on the member's private vehicle." *See* DoDD No. 1344.10, 4.1.1.8.

11. Shortly thereafter, Plaintiff called project manager Matilda Ramirez-Gallegos ("Ms. Ramirez-Gallegos") to inquire about the matter. Ms. Ramirez-Gallegos relayed the same information to Plaintiff as Ms. Huber. Plaintiff, unsure about the legality of the request, asked Ms. Ramirez-Gallegos for Provost Marshall's phone number. Plaintiff asked Ms. Ramirez-Gallegos to send him all information or complaints about the matter as well, either through text or email.

12. On or around June 22, 2022, Plaintiff called James L. Hobson Jr., GS-13 DAC, Chief Provost Marshal (BAMC) ("Mr. Hobson") inquiring if there was a regulation, memorandum, or law which prohibited Plaintiff from having a political bumper sticker on his personal vehicle. Mr. Hobson offered Plaintiff two choices – remove the sticker or refuse to and be terminated.

13. On or around June 23, 2022, since Plaintiff was not at work, Ms. Ramirez-Gallegos reached Plaintiff through a phone call to notify him that he had been terminated at the request of Anabel C. Siler, BAMC Contracting Officer. However, on that day, Plaintiff's vehicle was home with him, thereby not giving him the opportunity to remove the sticker before his next shift.

14. Later that day, Plaintiff received an email from Ms. Ramirez-Gallegos again notifying him of his termination; attached was a termination letter from Defendant Southern Foodservice Management.

15. The termination letter stated, "Mr. Eddie Munoz was asked to remove a sticker from his vehicle, and he refused. Mr. Munoz's termination was requested by the BAMC Contracting Officer due to his refusal to remove the sticker from his vehicle resulting in a violation of BAMC standards. We as contractors must follow all rules and regulations put in place by BAMC and the Department of Nutritional Medicine. Not all rules are set and there is no list for all these rules as the list would be endless. However, when the government says we must take a certain action, we have to comply. They are within their rights to ask us to terminate any of our employees."

16. Shortly after his termination, Plaintiff inquired with numerous individuals, including a Military Police Office, an agent at BAMC's Nutritional Department, and an agent at BMAC's Provost Marshal's Office, about the permissibility of political bumper stickers on personal vehicles; the general consensus was that none of these persons had heard of such regulations regarding political bumper stickers.

17. On July 10, 2022, Plaintiff submitted an Application for Unemployment benefits with the Texas Workforce Commission. The Defendant Southern Foodservice Management filed a timely protest to the Notice of Application for Unemployment but did not report base period wages for Mr. Munoz.

18. On July 29, 2022, the Texas Workforce Commission disqualified the Plaintiff's claim for unemployment benefits based on the Defendant's allegation that Mr. Munoz was discharged from his position due to misconduct connected to his work.

19. On July 30, 2022, Mr. Munoz appealed the Texas Workforce Commission's decision. The appeal process determined that disqualification from benefits could only occur if the claimant (Mr. Munoz) was discharged for misconduct connected with their work. Misconduct was defined as various forms of wrongdoing or violation of rules, excluding actions taken in response to an

unconscionable act by the employer or superior. The Commission cited a precedent case to establish that a claimant's dispute with a supervisor regarding a bumper sticker on a personal vehicle did not qualify as misconduct connected with the work. Expressing political beliefs on a personal vehicle was deemed separate from workplace misconduct. Additionally, Mr. Munoz was not given an opportunity to address any behavior deemed offensive by the employer.

20. On August 24, 2022, Plaintiff received the appeal decision. Consequently, the initial determination disqualifying Mr. Munoz from benefits due to misconduct connected with the work was reversed. The chargeback ruling, which assigns the allocation of benefit costs to the employer's account, was also voided due to the employer's failure to report Mr. Munoz's wages during the base period.

21. As a direct consequence of the Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered damages, including but not limited to loss of wages, commission, bonuses, and accrued vacation pay. Additionally, Plaintiff has experienced emotional distress and mental anguish.

## V. CAUSE OF ACTION

### FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

22. Plaintiff hereby incorporates by reference the allegations contained in the above-identified paragraphs, as though fully stated herein.

23. Plaintiff asserts that he suffered retaliation due to speech protected by the First Amendment. Specifically, Plaintiff contends that (1) he engaged in speech involving a matter of public concern (as set forth above), which is protected under the First Amendment; (2) he suffered an adverse employment action (i.e., termination) for exercising his First Amendment rights; and (3) his exercise of free speech was a substantial or motivating factor in the adverse employment action (i.e., termination).

24. Defendants deprived Plaintiff of his right to free speech that is guaranteed by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

25. At the time the adverse employment action occurred, Defendants' violation of Plaintiff's constitutional rights was objectively unreasonable. Defendants displayed reckless and callous indifference when Defendants terminated Plaintiff. Moreover, Defendants acted intentionally to chill Plaintiff's speech and punish him for exercising his rights under the First Amendment.

26. Defendants' action caused damage to Plaintiff.

## VI. DAMAGES

27. Plaintiff has sustained damages as a result of Defendant's actions described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages in an amount that exceeds the minimum jurisdictional limits of this Court, including, but not limited to, mental anguish and emotional pain and suffering in the past and future; impairment of reputation, personal humiliation; lost wages and benefits in the past and future; together with pre-judgment and post-judgment interest as allowed by law.

## VII. JURY DEMAND

28. Plaintiff demands a jury trial and tenders the appropriate fee with this complaint.

## VIII. PRAYER

29. For the reasons set forth above, Plaintiff Eddie Munoz respectfully pray that Defendants be cited to appear and answer herein, and for the following relief:

    a. A judgment in Plaintiff's favor on all claims asserted in this complaint;

    b. Judgment requiring Defendant Southern Foodservice Management to reinstate Plaintiff to his position as Food Service Worker;

    c. Past and future wages;

   d.  Lost employment benefits;

   e.  Compensatory damages;

   f.  Pre-judgment and post-judgment as permitted by law;

   g.  Reasonable attorney's fees and costs; and

   h.  For such other and further relief to which Plaintiff may show himself to be justly entitled.

        Respectfully submitted,



*/s/Alfonso Kennard, Jr.*
Alfonso Kennard, Jr.
Texas Bar No. 24036888
alfonso.kennard@kennardlaw.com
Kennard Law, P.C.
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
Tel: (713) 742-0900
Fax: (832) 558-6670

**ATTORNEY-IN-CHARGE**
**FOR PLAINTIFF**

**OF COUNSEL:**
Eddie Hodges, Jr.
State Bar of Texas No. 24116523
Kennard Law, P.C.
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
Tel: (713) 742-0900
Fax: (832) 558-9412
eddie.hodges@kennardlaw.com